CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
July 08, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN HUNTER ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23cv00205 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DEPUTY ZACH CLARKSON, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff John Hunter Alexander, a Virginia inmate proceeding *pro se*, brings this civil action under 42 U.S.C. § 1983 against Sheriff Viars, Sheriff's Deputy Clarkson, the County of Amherst, and several Amherst County Administrators. This matter is before the court on Sheriff Viars's motion to dismiss.[1] Having reviewed the pleadings, the court will grant the motion.[2]

## I.

Alexander alleges that on May 19, 2021, after an "unjust" traffic stop, Deputy Clarkson used excessive force against him during his arrest. (Am. Compl. 1–4 [ECF No. 23].) As a result of Deputy Clarkson's use of force, Alexander alleges that he has suffered a "sever[e]" broken

---

[1] The other defendants filed a motion to dismiss that will be addressed separately by the court. (*See* ECF No. 51.)

[2] The court notes that Viars submitted two printouts from the Virginia Judiciary Online Case Information System 2.0 as "Exhibit A" to his motion to dismiss to show that Alexander entered pleas of *nolo contendere* to charges that resulted from the incident that gives rise to his § 1983 complaint. (*See* ECF No. 26-1.) Viars argues that the court can consider this exhibit without converting the motion to dismiss to a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), because the court can take notice of matters of public record. *See, e.g.*, Fed. R. Evid. 201; *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). While the court agrees with that legal principle, the court has not considered those records in adjudicating Viars's motion to dismiss.

arm that has required multiple surgeries and still has not healed. (*Id.* at 3.) As it relates to Sheriff Viars, Alexander asserts only that "as the Sheriff of Amherst County," Viars is "responsible for the actions. . . [and] training of his deput[ies]." (*Id.* at 4.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*,

550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.

To the extent Alexander alleges that Sheriff Viars is liable for Deputy Clarkson's use of force under a theory of supervisory liability, his allegations fail to state a cognizable § 1983 claim. Accordingly, the court will grant Sheriff Viars's motion to dismiss this claim.

It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of

subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

To prevail on a claim for supervisory liability, a plaintiff must show the "*Shaw* elements":

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan v. Porter*, 737 F.2d 368, 373−74 (4th Cir. 1984). A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Here, Alexander's allegations do not establish the *Shaw* elements. Alexander's amended complaint relies on a general allegation that Sheriff Viars "is responsible for the actions of his deput[ies]." (Am. Compl. 4.) Alexander does not allege that Sheriff Viars had actual or constructive knowledge that Deputy Clarkson engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like Alexander. Conclusory assertions that Sheriff Viars should have known about the alleged unconstitutional conduct of Deputy Clarkson, standing alone, are not sufficient to state a claim for the personal liability against Viars. *See Jones v. Chapman*, No. ELH-14-2627, 2015 U.S. Dist. LEXIS 96562, at * 26 (D. Md. July 24, 2015). Accordingly, the court concludes that Alexander's allegations fail to state a viable § 1983 claim for supervisory liability against Sheriff Viars.

**IV.**

To the extent Alexander is raising a failure-to-train claim against Sheriff Viars, his claim fails. Although Alexander asserts that Sheriff Viars is "responsible for training his deput[ies]," he does not allege that Viars inadequately trained Deputy Clarkson. But even if the court liberally construed the amended complaint to allege a claim that Sheriff Viars failed to properly train Deputy Clarkson, Alexander's allegations still are insufficient to state a viable § 1983 claim against Viars on this ground. Accordingly, the court will grant Sheriff Viars's motion to dismiss this claim.

To state a failure-to-train claim, a plaintiff must allege that "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually

caused the subordinates to violate the plaintiff's rights." *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (cleaned up).

Even if the court were to assume that Deputy Clarkson violated Alexander's constitutional rights, Alexander has not alleged any facts to support a determination that Sheriff Viars failed to properly train Clarkson, that Viars was deliberately indifferent to the rights of citizens that his deputies may encounter, or that any failure to train actually resulted in the violation Alexander's rights. In fact, Alexander does not offer *any* details about Deputy Clarkson's training or lack thereof. Because Alexander's complaint lacks any facts to support his conclusory assertion, the court finds that Alexander's allegations fail to state a viable failure to train claim under § 1983. *See e.g., Griffin v. Mortier*, 837 F. App'x 166, 172 (4th Cir. 2020) (affirming dismissal of a failure-to-train claim where the allegations "consist[ed] of naked assertions that the Sheriff of Buncombe County failed to train and implement proper policies").

## IV.

For the reasons discussed, the court will grant Sheriff Viars's motion to dismiss and terminate Viars as a defendant to this action. This action remains pending against Sheriff's Deputy Clarkson, the County of Amherst, and Amherst County Administrators Bryant, Freeman, Niehaus, and Proffitt.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 8th day of July, 2024.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE